FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In the Matter of              :          Case No. 08-32423/JHW

Paul F. Livore                :

              Debtor          :          **OPINION**

_____

APPEARANCES:    Paul Stadler Pflumm, Esq.
                Joseph A. McCormick, Jr., P.A.
                76 Euclid Avenue, Suite 103
                Haddonfield, New Jersey 08033-2387
                Counsel for the Chapter 7 Trustee

                Andrew Hanan, Esq.
                The Hanan Law Firm LLC
                123 Haddon Avenue
                Haddonfield, New Jersey 08033
                Counsel for Frankel & Rubinson, Inc.

**FILED**
JAMES J. WALDRON, CLERK

June 26, 2012

U.S. BANKRUPTCY COURT
CAMDEN, NJ
BY: s/ Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

Before the court is the Chapter 7 trustee's motion to disgorge fees previously paid in the course of the administration of the Chapter 7 bankruptcy estate to a property management company retained by the trustee to service property owned and operated by the debtor. Because the services were performed in the ordinary course of the debtor's business under § 363(c)(1) of the Bankruptcy Code, and because such payments are not subject to disgorgement, the trustee's motion is denied.

## **FACTS**

The debtor, Paul F. Livore, filed a voluntary Chapter 11 bankruptcy petition on November 13, 2008.  The debtor's case was converted to a Chapter 7 on June 15, 2009, and John W. Hargrave was appointed the Chapter 7 trustee on June 16, 2009.

The debtor was the joint owner, with his wife, of several apartment complexes.  The Chapter 7 trustee obtained the authority to operate these and other businesses of the debtor.  After receiving complaints from tenants and encountering accounting issues, the trustee determined to hire a professional property management company to service the complexes.  Frankel and Rubinson, Inc. (F&R) was hired without notice and a hearing.  The U.S. Trustee "advised the [Chapter 7] Trustee that retention [pursuant to 11 U.S.C. § 327] was unnecessary so long as F&R did not collect rents or otherwise handle monies of the Bankruptcy Estate." (Trustee's Br. 3).  F&R provided services to the trustee for a four month period ending in early 2010.  F&R's describes its duties as "repair and maintenance  . . . including painting, remediation of building code violations, and snow removal." (F&R's Br. 3).  During this time, the trustee paid F&R $86,563.21 as an ordinary course payment pursuant to § 363(c)(1); the total fees invoiced by F&R were $91,398.44.

The trustee ultimately abandoned most of the assets of the estate.  The

estate is now administratively insolvent.  Some administrative creditors have

been paid in full in the ordinary course.  Insurance companies have been paid

premiums, and the debtor and other employees have been paid wages and have

been reimbursed for out of pocket expenses.  As well, two realtors have been

paid in full, apparently in connection with the sale of two properties of the

estate.  Several administrative claimants, who, with the exception  of the

debtor, are mostly professionals retained under § 327, have not been paid.

These include the Chapter 7 trustee, the Chapter 7 trustee's attorney, and the

Chapter 7 trustee's accountant, as well as the U.S. Trustee and the debtor (on

an administrative claim).[1]  The trustee seeks to disgorge $19,194.85 of the

prior payments to F&R.  F&R will then have received a total of 73.70% of its

entire claim.  The trustee would then be able to distribute 73.70% of the claims

of all administrative claimants who were not previously paid in full.


The trustee asserts that the payments made to F&R in the ordinary

course under § 363(c)(1) are administrative expenses under § 503(b)(1)(A),

which are entitled to priority under § 507(a)(2), and are subject to equality of

distribution with other similarly situated administrative claimants under §

726(b).  Disgorgement of a portion of the payment received is necessary to

---

[1]  Claims held by the unpaid administrative claimants are as follows:  the
Chapter 7 Trustee has three claims totaling $41,788.67, the U.S. Trustee is
owed $2,932.56, Mr. Livore is owed $7,000.00, the Trustee's counsel is owed
$51,500.00, and the Trustee's accountant is owed $2,500.00.

equalize the distribution among administrative claimants in the case.  In the

alternative, the trustee contends that the services rendered by F&R should be

characterized as "semi-professional" rather than as ordinary course under §

363(c)(1), or as not in the ordinary course, thereby subjecting the fees received

to disgorgement.  In response, F&R contends that it performed ordinary course

services for the trustee, and that payments made under § 363(c)(1) during the

administration of a bankruptcy case are not subject to disgorgement under §

726(b).

## **<u>DISCUSSION</u>**

The trustee's motion to disgorge the payments made to F&R presents a

conflict between two basic principles of our bankruptcy scheme.  On the one

hand is the policy of equality of distribution among creditors, central to the

Bankruptcy Code, under which "creditors of equal priority should receive pro

rata shares of the debtor's property."  <u>Begier v. I.R.S.</u>, 496 U.S. 53, 58, 110 S.

Ct. 2258, 2262-63, 110 L.Ed.2d 46 (1990).  On the other, courts have

recognized the "strong public policy in favor of maximizing debtors' estates and

facilitating successful reorganization."  <u>In re Continental Airlines</u>, 91 F.3d 553,

565 (3d Cir. 1996).   In the Chapter 7 context, the focus is on maximizing the

value of the debtors' estates, rather than facilitating reorganization.  To fulfill

this policy, creditors need to be encouraged to engage in business with a

4

bankruptcy trustee, and to be assured that payments they receive for services

performed for the benefit of the estate will not have to be returned.

Ordinary course transactions are authorized under § 363(c)(1), which

provides:

> If the business of the debtor is authorized to be operated under
> section 721, 1108, 1203, 1204, or 1304 of this title and unless the
> court orders otherwise, the trustee may enter into transactions,
> including the sale or lease of property of the estate, in the ordinary
> course of business, without notice or a hearing, and may use
> property of the estate in the ordinary course of business without
> notice or a hearing.

11 U.S.C. § 363(c)(1).  In contrast, a trustee may use property of the estate

outside the ordinary course of the debtor's estate only after notice and a

hearing.

> The framework of section 363 is designed to allow a trustee
> (or debtor-in-possession) the flexibility to engage in ordinary
> transactions without unnecessary creditor and bankruptcy
> court oversight, while protecting creditors by giving them an
> opportunity to be heard when transactions are not ordinary.

In re Roth Am. Inc., 975 F.2d 949, 952 (3d Cir. 1992).

While the trustee recognizes that § 363(c)(1) authorizes ordinary course

payments without notice or a hearing, the trustee asserts that the payments

made to F&R must be disgorged to achieve the pro rata distribution required by

§ 726.  In relevant part, § 726 of the Bankruptcy Code states:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph.

11 U.S.C. § 726(b).  Section 726 requires a pro rata distribution to unpaid priority and general unsecured creditors of the same priority.  As is relevant here, § 507(a)(2) places "administrative expenses allowed under § 503(b)" in second priority for distribution.  11 U.S.C. § 507(a)(2).  In turn, § 503(b) lists claims entitled to administrative expense status, including "the actual, necessary costs and expenses of preserving the estate," and compensation for professional services by an attorney or accountant of the estate.  11 U.S.C. §§ 503(b)(1)(A), (b)(4).

As noted, the cited Code provisions specify that all administrative expense claims should receive the same pro rata distribution.  As a practical matter, it doesn't always happen that way.  Where an administrative claimant is paid in full under § 363(c)(1), in the ordinary course of business, their claim is satisfied and the claimant receives no further payment from the estate at the time of distribution.  Section 726(b) is not implicated.  If administrative claimants that could have been paid in the ordinary course are not paid at the time that the estate incurs the debt, and if there are insufficient funds to cover all administrative expenses in full, then their claims, designated as § 503(b) claims, are paid pro rata with other remaining administrative creditors.  See In

re Fla. W. Gateway, Inc., 166 B.R. 981, 984 (Bankr. S.D. Fla. 1994); In re

Vernon Sand & Gravel, Inc., 109 B.R. 255, 258 (Bankr. N.D. Ohio 1989).


The issue of whether the Code authorizes the disgorgement of payments

made to administrative claimants in the ordinary course of business is resolved

by § 549, which governs post petition transactions.  In relevant part § 549(a)

provides:


    (a) Except as provided in subsection (b) or (c) of this section, the
    trustee may avoid a transfer of property of the estate--

        (1) that occurs after the commencement of the case; and

        (2)    (A) that is authorized only under section 303(f) or
                542(c) of this title; or

                (B) that is not authorized under this title or by the
                court.


In effect, the statute proscribes the avoidance by a trustee of payments

"authorized under this title or by the court", 11 U.S.C. § 549(a)(2)(B), serving as

an express bar against unwinding transactions conducted, or payments made,

under Code authority.  As noted above, payments made by a trustee in the

ordinary course of the business of the bankruptcy estate are specifically

authorized under § 363(c)(1).  Such payments are not subject to avoidance or

disgorgement.  See, e.g., In re St. Joseph's Cleaners, 346 B.R. 430, 436 (Bankr.

W.D. Mich. 2006) (opining, in dicta, that disgorgement of ordinary course

payments is unavailable because Section 549 does not permit return of such

payments.)

In dicta, two Courts of Appeal have supported the proposition that § 549

proscribes the avoidance of payments made in the ordinary course of business

by a trustee or debtor-in-possession under § 363(c)(1).  In In re Roth American,

Inc., the Third Circuit was presented with a case in which the debtor had

negotiated post-petition for modification of a collective bargaining agreement

with a union; under the negotiated terms, the debtor agreed to continue its

operations for two years.  975 F.2d at 950.  Four months later, the debtor laid

off all employees, and the creditor filed a claim for breach of the modified

agreement.  Id. at 951.  The bankruptcy court ruled that the agreement was

not an enforceable post-petition agreement because it "was not accepted or

rejected under the terms of the United States Bankruptcy Code."  Id.  On

appeal before the Third Circuit, the union argued that the modification was a §

363(c) ordinary course transaction and thus did not require bankruptcy court

approval.  Id.  In rejecting the union's position that the post-petition agreement

between the union and the debtor was an ordinary course of business

transaction, the court explained that such post-petition agreements are not

ordinary course transactions under § 363(c)(1), but are made "other than in the

ordinary course of business," requiring notice and a hearing in order to be

enforceable.  11 U.S.C. § 363(b)(1).  Id. at 952.  In a footnote in which the court

cited to 11 U.S.C. § 549(a)(2)(B), the court noted that "[i]n the event that a

8

transaction is undertaken that is not in the ordinary course of business without notice and a hearing, it may be avoided in bankruptcy." Id. at 952 n.3. This passage strongly suggests that the opposite is also true, i.e., that a transaction undertaken in the ordinary course of business, with no notice and hearing required, may not be avoided in bankruptcy.

Similarly, the Fourth Circuit has also referenced § 549 in dictum, noting in a footnote that ordinary course transactions may not be avoided. In re Se. Hotel Prop. Ltd., 99 F.3d 151, 153 n.3 (4th Cir. 1996). In that case, the bankruptcy court held, and the Court of Appeals affirmed, that the trustee could avoid transfers made by the debtor post-petition outside of the ordinary course under § 549, and could recover the transferred property from the initial transferee under § 550. Id. at 153. On appeal, the focus of the court was on the status of the creditor as initial transferee. Section 549 was not an issue raised on appeal. Nonetheless, when describing the case's procedural history, the court noted that "a post-petition transfer effected by a debtor-in-possession that occurs in the ordinary course of the debtor's business is authorized under §§ 1107 and 1108 and may not be avoided under § 549." Id. at 153 n.3 (citing to In re Roth Am., 975 F.2d at 952).

Other cases, in various contexts and for various reasons, have also agreed, often in dicta, that § 363(c)(1) payments may not be ordered disgorged. In a Chapter 11 case, one court expressed concern that if such payments were

subject to disgorgement, "[b]usinesses operating under Chapter 11 would not be able to retain employees, hire outside services, or even maintain accounts with utility companies." In re Vernon Sand & Gravel, 109 B.R. at 257. Therefore, "[p]ractical necessities require that administrative expenses resulting from the ordinary course of business be paid immediately and not be subject to any pro-rata reductions." Id. See also In re Telesphere Commc'ns, Inc., 148 B.R. 525, 531 (Bankr. N.D. Ill. 1992) ("[V]endors who receive payments from the trustee or debtor in possession, for value in the ordinary course of business under Section 363(c)(1), need not fear that the money they receive is subject to disgorgement."); In re Manwell, 62 B.R. 533, 534 (Bankr. N.D. Ind. 1986) ("The expenses which a chapter 11 debtor incurs and pays in the ordinary course of his business cannot be avoided. . . . The alternative would make it impossible for any prudent business person to voluntarily do business, even on a cash basis, with a chapter 11 debtor." ); In re Fla. W. Gateway, Inc., 166 B.R. at 984 (Administrative creditors should not "have the distribution with respect to their unpaid administrative claim reduced merely because it was paid in the ordinary course of business for prior sales. Rather, the remaining balance should be treated as a Section 503(b) administrative claim, and paid pro rata with all other unpaid administrative creditors." ).  The same rationale would undoubtedly apply to businesses operating under Chapter 7.

In In re Lochmiller Industries, Inc., the Chapter 7 trustee moved to disgorge payments to professionals.  178 B.R. 241, 243 (Bankr. S.D. Cal.

1995).  In response, the debtor's attorney argued that both professionals' fees

and payments made in the ordinary course should be disgorged.  Id. at 247.

Rejecting that view, the court refused to order disgorgement of ordinary course

payments, noting that

> all of the cases which have addressed the issue have
> uniformly held that funds paid to administrative claimants
> in the ordinary course of a Chapter 11 case may not be
> recaptured. This Court is aware of no case in which a court
> has held that a payment made in the ordinary course could
> be recovered. This Court agrees with the cases cited and
> holds that disgorgement may not be had of claimants paid in
> the ordinary course.  In this Court's view, statutory
> authorization for payment of ordinary course expenses
> contrasts with the discretionary authorization to award
> interim compensation to professionals, (11 U.S.C. § 363 and
> §§ 330 and 331), and supports such a result.

Id. at 249-50.

Like the court in In re Lochmiller, we are unaware of any cases that hold

that ordinary course payments may be disgorged.  Based on § 549(a) and the

bevy of cases that support our conclusion, we conclude that § 363(c) payments

are not subject to disgorgement.

In further support of his motion to disgorge a portion of the payments

made to F&R, the trustee offers an alternative ground.  He submits that F&R

might be characterized as "semi-professional" and that the payments are

therefore vulnerable to disgorgement.  Because we can readily conclude that

F&R was not a professional under § 327, we need not resolve the extent to

11

which professional fees paid in the course of the administration of a

bankruptcy estate may be disgorged.


One of our colleagues of the New Jersey Bankruptcy Court has

recognized that:

> In order to be considered a "professional person" within the
> meaning of § 327, it is not enough that the party be a professional
> by education or training. Instead he or she must also play an
> integral role in the administration of the bankruptcy case. The
> professional could assist the trustee with important activities, such
> as obtaining post-petition financing, negotiating creditor claims or
> formulating a plan of reorganization. It is these types of activities
> that rise to the level necessary to be considered a "professional
> person" under § 327(a).


In re Napoleon, 233 B.R. 910, 913 (Bankr. D.N.J. 1999)(Lyons, J.).  In this

case, F&R did not play an integral role in the administration of the bankruptcy

case, but merely carried out the trustee's orders to service the debtor's

properties in the ordinary course of the business of managing the debtor's

properties.  F&R's duties were limited to property maintenance, repairs, and

"finding and evicting tenants." (Trustee's Cert. ¶ 3).  The trustee himself

handled collection of rents, bill payment, and financial management of the

properties.  As we have noted, the U.S. Trustee agreed that F&R did not need to

be retained as a professional under § 327(a).  The typical administrative tasks

required of a Chapter 7 professional, such as liquidating assets, resolving

claims and making distribution to creditors, were not implicated by the

services rendered by F&R.  I can readily conclude that under these

circumstances, F&R does not qualify as a professional entity requiring

retention under 11 U.S.C. § 327(a).[2]


Finally, the trustee suggests as an alternative argument that the

payments made to F&R were not payments made in the ordinary course.[3]  The

---

[2]  We note that the Seventh Circuit in Park Terrace Townhouses v. Wilds,
852 F.2d 1019 (7th Cir. 1988) characterized the activities of a property manager
as professional for purposes of § 327(b).  In that case, the manager had entered
into an agreement to purchase the properties and had undertaken significant
duties:

> [he] personally assumed the roles of property manager and maintenance
> supervisor . . . [and] instituted a marketing program which increased
> occupancy from 58% to 73% and monthly income from approximately
> $24,500 to $32,700. [The manager] removed the debtor's resident
> manager and took over the functions of that position by hiring, training,
> and supervising a staff to perform all required leasing, bookkeeping,
> maintenance, and related activities. In addition to the maintenance
> necessary to prevent damage from the severe winter weather, [he]
> upgraded and remodeled the rental units.

Id. at 1020 (quoting the District Court Order, July 29, 1987, at 3-4).  Certainly,
the duties of the manager in that case far exceeded the duties of F&R in this
case.  In addition, other courts have noted, in limiting the impact of the
Seventh Circuit's analysis of the issue in Park Terrace Townhouses, that "[i]t
does not appear that the issue of whether a property manager met the evolving
case law definition of a professional person was contested or analyzed in PTT."
In re Park Ave. Partners Ltd., 95 B.R. 605, 616 (Bankr. E.D. Wisc. 1988).

[3]  "When analyzing 'ordinary course of business,' the Third Circuit [has]
adopted a two-step approach consisting of a horizontal and a vertical
dimension."  In re N.J. Mobile Dental Practice, P.A., No. 07–1988(DHS), 2008
WL 1373706, *5 (Bankr. D.N.J. Apr. 7, 2008). The horizontal dimension test
examines whether the transaction is "commonly undertaken by companies in
that industry."  In re Roth Am., 975 F.2d at 953.  The vertical dimension test
examines whether a hypothetical creditor of the debtor would be subjected "'to
economic risk of a nature different from those he accepted when he decided to
extend credit.'"  Id. (quoting Benjamin Weintraub & Alan N. Resnick, The
Meaning of "Ordinary Course of Business" Under the Bankruptcy Code-Vertical
and Horizontal Analysis, 19 UCC L.J. 364, 365 (1987)).  "Under this test, '[t]he

trustee, in coordination with the U.S. Trustee, determined that the payments were to be made as ordinary course payments under § 363(c) of the Code.  The equities of the case will not allow the trustee to now assert that these payments were not ordinary course payments.    The trustee's suggestion in this regard is rejected.

## **CONCLUSION**

Because payments made by a trustee in the ordinary course of business under § 363(c)(1) may not be disgorged in order to effect a pro rata distribution among administrative claimants, as otherwise required by § 726(b), the trustee's motion to disgorge a portion of the payments made to Frankel & Rubinson is denied.

---

touchstone of 'ordinariness' is ... the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.'" Id. (quoting In re James A. Phillips, Inc., 29 B.R. 391, 394 (S.D.N.Y.1983).  While the debtor's pre-petition conduct is the primary focus of this test, a court should also "'consider the changing circumstances inherent in the hypothetical creditor's expectations.'" Id.  (quoting Benjamin Weintraub & Alan N. Resnick, The Meaning of "Ordinary Course of Business" Under the Bankruptcy Code-Vertical and Horizontal Analysis, 19 UCC L.J. 364, 366 (1987)).

Counsel for the trustee shall submit a form of order consistent with this

opinion.


Dated:   June 26, 2012

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT